*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

_____

Before
HOLIFIELD, KIRKBY, and DALY
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Joseph D. SUAREZ**
Corporal (E-4), U.S. Marine Corps
*Appellant*

**No. 202300049**

_____

Decided: 23 August 2024

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
Melanie Mann (Arraignment)
Cory Picton (Motions)
Stephen Keane (Motions)
Andrea Goode (Plea)

Sentence adjudged 18 October 2022 by a general court-martial convened at Marine Corps Base Hawaii, consisting of a military judge sitting alone. Sentence approved by the convening authority: confinement for 60 months, reduction to E-1, and a dishonorable discharge.

For Appellant:
*Major Colin W. Hotard, USMC*

For Appellee:
*Major Candace G. White, USMC*
*Lieutenant Blake Royall, JAGC, USN*

Senior Judge KIRKBY delivered the opinion of the Court, in which Chief
Judge HOLIFIELD and Senior Judge DALY joined.

_____

**This opinion does not serve as binding precedent under
NMCCA Rule of Appellate Procedure 30.2.**

_____

KIRKBY, Senior Judge:

A military judge sitting alone as a general court-martial convicted Appellant
pursuant to his pleas of five specifications of wrongful use, introduction, and distri-
bution of controlled substances in violation of Article 112a, Uniform Code of Mili-
tary Justice (UCMJ), and one specification of Article 81, UCMJ, for conspiracy to
distribute cocaine.[1]

Appellant asserts three assignments of error (AOEs) which we summarize as
follows: (1) Unlawful command influence (UCI) by Appellant's battalion com-
mander through his words and actions during Appellant's apprehension; (2) illegal
pretrial punishment in violation of Article 13, UCMJ; and (3) ineffective assistance
of counsel by: (a) failing to seek Article 13, UCMJ, credit; (b) negotiating a plea
agreement to avoid sex offender registration where no such registration was re-
quired; and (c) advising Appellant to agree to "waive all waivable motions" includ-
ing one seeking relief for UCI. We find no prejudicial error and affirm.

## I. BACKGROUND

In 2021, Naval Criminal Investigative Service (NCIS) agents were notified by
an agent of Marine Corps Criminal Investigative Division of a large number of
positive urinalysis results, primarily positive results for cocaine, from within Ap-
pellant's unit.[2] In a rapidly developing investigation, NCIS agents utilized a confi-

_____

[1] 10 U.S.C §§ 912a and 881.

[2] R. at 22.

dential informant who identified Appellant as the source of cocaine for the battalion.[3] Soon after, NCIS agents, in an undercover role, contacted Appellant and discussed narcotic sales.[4] On 6 January 2022, Appellant tested positive for cocaine and 3, 4-methylenedioxy-N-methamphetamine (MDMA) on a random urinalysis test,[5] and the NCIS agents determined that they would apprehend him prior to him being notified of that result. Initially, Appellant's apprehension was planned for 10 January 2022, but the battalion had been released for the day before that could happen. NCIS agents determined that they would wait until the next day, intending to apprehend Appellant in his workspace. The following day they were told that Appellant would be in a classroom at 0800. They waited until they were advised that Appellant had arrived, approximately 20 minutes after the start of the event, and then were escorted to Classroom 7 which was part of a large auditorium where stadium style seating was set up and a large part of the battalion was gathered.[6] NCIS Special Agent (SA) J.W. identified Appellant, called him over, and apprehended him before escorting Appellant from the auditorium.[7] The battalion commander, Lieutenant Colonel (LtCol) W., was present and knew of the investigation and apprehension of Appellant. While SA J.W. testified that he did not hear the battalion commander say anything specific at the time of the apprehension, there is ample evidence that LtCol W. said to the gathered Marines "This is who's been dealing cocaine in my barracks."[8] Additionally, Sergeant Major (SgtMaj) C., the battalion sergeant major, referred to Appellant as "the drug kingpin" and stated to the Marines present, "this piece of s\*\*t drug kingpin has been selling drugs in your barracks and no one has the nut sack to say anything about it."[9] These comments and the circumstances of Appellant's apprehension form the basis of AOEs 2 and 3(a).

Following the comments made by both LtCol W. and SgtMaj C., and an Inspector General complaint being filed, several steps were taken by the Commanding General (CG)[10] including: (1) On 20 January 2022, the CG exercised his authority

---

[3] R. at 22.

[4] R. at 24; *see also* Pros. Ex. 1.

[5] Appellate Ex. V.

[6] R. at 30.

[7] R. at 30.

[8] R. at 69.

[9] Appellate Ex. XXVII at 1.

[10] Commanding General, 3rd Marine Division.

and took the investigation of Appellant's case away from the battalion commander; (2) a command investigation was initiated into the comments made by the battalion commander and the command SgtMaj; (3) the CG removed both the battalion commander and command SgtMaj from their positions.[11]

Charges against Appellant were preferred on 3 February 2022 and reviewed by a Preliminary Hearing Officer who was appointed by Commanding Officer, 3rd Marine Littoral Regiment.[12] The charges were then referred to a general court-martial on 7 April 2022 by the CG as the convening authority.

On 31 May 2022, the Defense filed a motion to dismiss the charges based on UCI.[13] At a subsequent Article 39(a), UCMJ, session, the military judge took testimony and heard argument regarding the alleged UCI, and both sides presented thorough explanations of their respective positions.[14]

The military judge issued a ruling regarding the UCI and later supplemented that ruling with additional findings of fact and conclusions of law. After finding that the Defense had presented "some evidence" of UCI, the military judge determined that the Government had proved beyond a reasonable doubt that "[a]ctual UCI did not affect the proceedings" and that "[a]pparent UCI did not place an intolerable strain on the public's perception of military justice…"[15] Nevertheless, the military judge did order curative safeguards concerning Appellant's rights. The trial court mandated that:

(1) …[the CA would] issue a directive to encourage any member of the command to serve as a witness in support of the Accused without any repercussions; and

(2) the Defense will be authorized liberal voir dire of the members.…[16]

---

[11] LtCol W. and SgtMaj C. were relieved following an Inspector General (IG) complaint and investigation that substantiated several issues including alcohol consumption during field exercises and the use of derogatory language towards a Hispanic Marine.

[12] The Preliminary Hearing Officer recommended forwarding the case for trial by General Court-Martial.

[13] Appellate Ex. VII.

[14] R. at 16-136.

[15] Appellate Ex. XXVII at 2.

[16] Appellate Ex. XXVII at 1-3.

In addition, on 26 July 2022, the new military judge supplemented the previous remedies by mandating that "no members [of the panel] come from 3d Battalion, 3d Marines…"[17]

On 9 August 2022, Appellant signed a plea agreement that allowed him to plead not guilty to a charge of attempted prostitution in violation of Article 80, UCMJ[18] and a charge of solicitation to distribute cocaine in violation of Article 82, UCMJ. The signed plea agreement authorized the military judge to sentence Appellant to confinement of between 24 and 60 months[19] and required Appellant to waive all waivable motions.[20]

On 18 October 2022, Appellant pleaded guilty pursuant to the plea agreement. At that time the military judge conducted a thorough *Care*[21] inquiry that included specific questions to Appellant regarding his understanding of the "waive all waivable motions" provision and the impact of that provision on the previously litigated motions including the UCI motion.[22] Appellant acknowledged his understanding of the plea agreement provisions and their impact on his case, and that he was satisfied with his counsel.[23]

As part of this appeal Appellant submitted a motion to attach two declarations, one from trial defense counsel and one from Appellant. Those declarations discuss the UCI issue and their understanding of the plea colloquy. We granted that motion and separately ordered trial defense counsel to submit additional declarations regarding Appellant's allegations about the impact of entering into a plea agreement and pleading not guilty to a charge of attempted prostitution to avoid possible sex offender registration. We received the affidavit from trial defense counsel on 5 April 2024.

---

[17] R. at 169.

[18] This charge is the subject of AOE 3(b) related to sex offender registration.

[19] Leading to AOE 3(b) before this court.

[20] Leading to AOE 3(c) before this court.

[21] *United States v. Care*, 18 C.M.A. 535, 40 C.M.R. 247 (1969).

[22] R. at 400-402.

[23] R. at 404-407.

In a separate filing Appellant moved this Court to consider his case en banc and to overrule our published opinion in *United States v. Gattis*.[24] That motion was denied.

## II. DISCUSSION

### A. Unlawful Command Influence

#### 1. *Standard of Review and the Law*

Article 37, UCMJ, prohibits unlawful command influence by all persons subject to the UCMJ. Unlawful command influence has long been recognized as "the mortal enemy of military justice."[25] Article 37 (c) states: "No finding or sentence of a court-martial may be held incorrect on the ground of a violation of this section *unless the violation materially prejudices the substantial rights of the accused.*"[26] We review claims of unlawful influence de novo.[27] To make a prima facie case of apparent unlawful command influence, an accused bears the initial burden of presenting "some evidence" that unlawful command influence occurred.[28] "This burden on the defense is low, but the evidence presented must consist of more than 'mere allegation or speculation.'"[29] Once the accused meets the "some evidence" threshold, the burden shifts to the Government to prove beyond a reasonable doubt that either: (a) the "predicate facts proffered by the appellant do not exist," or (b) "the facts as presented do not constitute unlawful command influence."[30] If the Government cannot succeed at this step, it must prove beyond a reasonable doubt that the unlawful command influence "did not place an intolerable strain upon the public's perception of the military justice system and that an objective, disinterested observer, fully

---

[24] 81 M.J. 748 (N-M. Ct. Crim. App. 2021).

[25] *United States v. Thomas*, 22 M.J. 388, 393 (C.M.A. 1986).

[26] Article 37(c), UCMJ, 10 U.S.C. § 837(c) (2018 & Supp. I 2019-2020) (emphasis added).

[27] *United States v. Barry*, 78 M.J. 70, 77 (C.A.A.F. 2018) (citing *United States v. Salyer*, 72 M.J. 415, 423 (C.A.A.F. 2013).

[28] United States v. *Boyce*, 76 M.J. 242, 249 (C.A.A.F. 2-17) (quoting *United States v. Stoneman*, 57 M.J. 35, 41 (C.A.A.F. 2002) (internal quotation marks omitted).

[29] *Id.* (quoting *Salyer*, 72 M.J. at 423).

[30] *Id.* (citing *Salyer*, 72 M.J. at 423) (citation omitted).

informed of all the facts and circumstances, would [*not*] harbor a significant doubt about the fairness of the proceeding."[31]

This Court must accept the military judge's findings of fact unless the findings are clearly erroneous.[32] "A finding of fact is clearly erroneous when there is no evidence to support the finding, or when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."[33] When assessing a military judge's findings of fact related to this issue, we apply a "clearly erroneous" standard.[34] Thus, "where a military judge made detailed findings of fact . . . and these findings are clearly supported by the record, we adopt them for our analysis."

This Court in *United States v. Gattis,*[35] our sister courts, and the Court of Appeals for the Armed Forces [CAAF] in *United States v. Gilmet*[36] suggest that the recent change to Article 37, UCMJ, "vitiate[s] the prior apparent UCI intolerable strain / disinterested observer jurisprudence."[37] Notwithstanding that shift, we find Appellant has failed to make the requisite showing under actual or apparent UCI theory and therefore leave the question of whether the apparent UCI doctrine still exists for another day.

### 2. Analysis

#### a. Appellant Waived his UCI claim in his Plea Agreement.

Whether an appellant has waived an issue is a question of law we review de novo.[38] Whether a particular right is waivable; whether the defendant must participate personally in the waiver; whether certain procedures are required for waiver;

---

[31] *Id.* at 249 (alteration in original) (internal quotation marks omitted) (citation omitted); *see United States* v. *Bergdahl*, 80 M.J. 230, 234 (C.A.A.F. 2020).

[32] *United States v. Mosby*, 56 M.J. 309, 310 (C.A.A.F. 2002).

[33] *United States v. Criswell*, 78 M.J. 136, 141 (C.A.A.F. 2018) (cleaned up) (citations omitted).

[34] *United States v. Villareal*, 52 M.J. 27, 30 (C.A.A.F. 1999) (citing *United States v. Wallace*, 39 M.J. 284, 286 (CMA 1994)).

[35] 81 M.J. 748 (N-M. Ct. Crim. App. 2021).

[36] 83 M.J. 398 (C.A.A.F. 2023).

[37] *Gattis*, 81 M.J. at 755 (internal quotation marks omitted).

[38] *United States v. Rosenthal*, 62 M.J. 261, 262 (C.A.A.F. 2005).

and whether the defendant's choice must be particularly informed or voluntary, all depend on the right at stake.[39]

Appellant's motion demonstrates an understanding of the UCI issue, the impact of the statements by battalion leadership on the case, and the relative strengths of each party's positions.[40] During his providence inquiry the military judge specifically asked Appellant:

> There was a motion to dismiss for unlawful command influence; a motion to preclude evidence pursuant to M.R.E. 404(b); a motion to get you released from pre-trial confinement; and a motion to compel experts; and, finally, a motion to suppress evidence that was seized when the investigators did their search. Do you understand that by this provision in your agreement, you're waiving your right to appellate review of these issues?[41]

Appellant responded: Yes, Your Honor.

The military judge then asked if defense counsel agreed with that, to which counsel also responded in the affirmative.

The military judge further confirmed:

> Knowing what your defense counsel and I have told you, do you want to give up making these motions in order to get the benefit of your plea agreement?

Appellant again responded: Yes, Your Honor.[42]

This is seemingly at odds with Appellant's position on appeal that he was "confused" and "…did not think that meant that the appellate court could not overrule the judge's decision."[43]

It is well established that a party may waive any provision either of a contract or of a statute, intended for his benefit[44] and that a criminal defendant may knowingly and voluntarily waive many of the most fundamental protections afforded by

---

[39] *United States v. Olano*, 507 U.S. 725, 733 (1993).

[40] Appellate Ex. VII.

[41] R. at 402.

[42] R. at 404.

[43] Appellant's Motion to Attach dated 22 September 2023, App'x B.

[44] *Shutte v. Thompson*, 82 U.S. 151 (1873).

the Constitution.[45] In the absence of an explicit prohibition, a party may knowingly and voluntarily waive rights in a plea agreement.[46] Although the President has prohibited the waiver of certain fundamental rights in a plea agreement, the right to have proceedings free from UCI is not among them.[47] By negotiating and entering into a plea agreement after the UCI motion was heard, Appellant's actions leave us satisfied he affirmatively, knowingly and consciously waived the UCI claim in his case. Therefore, based on the totality of the record before us we find Appellant intentionally relinquished a known right, leaving no error to correct on appeal.[48]

b. Assuming Arguendo Appellant's UCI claim was not waived, Statements by Battalion Leaders did not materially prejudice Appellant's Rights.

In *United States v. Hamilton*[49] the CAAF noted that "unlawful command influence" was used in the military to cover numerous situations in which superiors had unlawfully controlled the actions of subordinates in the exercise of their duties under the UCMJ. Later, the CAAF sought to distinguish between the accusatorial process and the adjudicative stage, noting that was the difference between preferral, forwarding, referral, and the adjudicative process, including interference with witnesses, judges, members, and counsel.[50]

The present case presents a claim of UCI in the adjudicative process. The public and well-documented comments by LtCol W. and SgtMaj C. clearly met the defense threshold of "some evidence." Publicly labeling Appellant as the "king pin" and making other disparaging remarks is not condoned; however, while Appellant is entitled to a fair trial, even such ill-conceived language does not entitle Appellant to a windfall. In terms of legal consequence, such comments shift the burden to the Government to prove, beyond a reasonable doubt, that the violation did not materially prejudice the substantial rights of an accused.[51] In other words, while

---

[45] *United States v. Mezzanatto*, 513 U.S. 196, 201 (1995).

[46] See generally *United States v. Edwards*, 58 M.J. 49, 52 (C.A.A.F. 2003).

[47] R.C.M. 705(c)(1)(B).

[48] *United States v. Campos*, 67 M.J. 330, 332 (C.A.A.F. 2009) (internal quotation marks omitted) (citation omitted).

[49] 41 M.J. 32, 36 (C.A.A.F. 1994) (citation omitted).

[50] *United States v. Weasler*, 43 M.J. 15 (C.A.A.F. 1995).

[51] The Government has the opportunity to prove either that "(1) the predicate facts do not exist; (2) the facts do not constitute unlawful command influence; or (3) unlawful command influence did not affect the findings or sentence." *Salyer*, 72 M.J. at 423.

UCI may be recognized upon the action, or words, of any particular actor, we must look at those actions and the subsequent action of the Government to mitigate the prejudice to an accused and ameliorate the situation.[52] Appellant asks us to find that only two potential cures exist for inappropriate conduct or words: (1) an explicit instruction to disregard the message; and (2) having the "perpetrator" take responsibility and apologize.[53] However, both of these potential cures leave the UCI of the respective case in limbo and establishing such a rule does not move the solution in a positive direction.[54] We therefore reject a bright line rule and will look to the totality of the circumstances to determine if, despite any remedial actions, the substantial rights of the accused were materially prejudiced.

In this case the Government, via the CG, took several significant steps to remedy the negative impact on Appellant. First, by removing the case from the control of LtCol W. before preferral of charges ever occurred, the CG ensured objectively neutral oversight of the preferral process. Second, by conducting a formal investigation, including into the comments made about Appellant, during which numerous members of the command (including potentially favorable witnesses), were interviewed, the CG ensured the impropriety of the remarks made by LtCol W. and SgtMaj C. were highlighted. Finally, publicly removing LtCol W. and SgtMaj C. from their command positions ensured the consequence of their actions was publicized. We, like the military judge during the motions session, are convinced beyond a reasonable doubt that the remedial actions by the Government ensured that an objective, disinterested observer, fully informed of all the facts and circumstances, would not harbor a significant doubt about the fairness of the proceeding.[55] This view is further enhanced by the curative measures ordered by the military judges as a result of the UCI motion and Appellant's plea and providence colloquy. While those curative measures never came to bear, their existence contribute to the seeming fairness of the proceedings. Similarly, by entering into a plea agreement, pleading guilty in open court and engaging in the providence inquiry related to the

---

[52] *United States v. Horne*, 82 M.J. 283 (C.A.A.F. 2022).

[53] Appellant's Brief at 22.

[54] We are reminded of Schrödinger's cat; see https://www.newscientist.com/definition/schrodingers-cat/. If either or both proposed cures are met, is the UCI resolved? If neither, then is it de facto UCI? This raises more questions of context, tone, wording, timing and impact than it answers.

[55] We note the impact of *U.S. v. Gattis* and similar cases and the changes to Article 37 that may vitiate apparent UCI doctrine, and comment on it here out of an overabundance of caution.

charges, Appellant's own actions, including his plea colloquy,[56] contributed to the apparent fairness of the proceedings. Accordingly, we find no apparent UCI.

Furthermore, while the comments and statements by LtCol W. and SgtMaj C. were inappropriate, ill-advised and amounted to UCI, in toto the Government's remedial actions, the military judge's ordered additional remedies, and the totality of the circumstances lead us to conclude Appellant was not materially prejudiced by that influence the net result was no actual UCI.

Appellant asks us to apply the analysis from *United States v. Douglas*[57] in reviewing the judicially mandated UCI cure, we decline to do so. Unlike in *Douglas*, Appellant here entered into a plea agreement with the convening authority and pleaded guilty. That decision fundamentally alters the trial equation including the impact on possible defenses. Here, given the stipulation of fact freely signed by Appellant, it is not difficult to understand why "good military character" witnesses were hard to identify and tactically questionable to call to the stand. The decision not to avail himself of the remedial cures offered by the military judge is part and parcel of the decision to enter into a plea agreement. Appellant waived enforcement of the judicial remedies by failing to insist on them and by entering into the plea agreement that rendered them largely moot.

Appellant and trial defense counsel, in their declarations on appeal ask us to believe that the guilty plea was a result of the UCI and the inability to identify fellow Marines who would testify regarding Appellant's military character and limited participation in the drug enterprise. This is contradictory to the stipulation of fact signed by Appellant and both trial defense counsel in which Appellant admits purchasing, splitting and selling more than 5oz of cocaine over a period of less than three weeks.[58] The stipulation of fact was discussed on the record and Appellant was offered numerous opportunities to challenge both the veracity of the document and the details contained therein.[59] We are therefore unconvinced that the UCI was the forcing factor behind the plea agreement and we are convinced beyond a reasonable doubt that Appellant knowingly, intelligently and willingly entered into

---

[56] R. at 404-405.

[57] 68 M.J. 349 (C.A.A.F. 2010).

[58] Pros. Ex. 1.

[59] R. at 317-319.

that agreement because it was in his best interest to do so in light of the evidence against him.

## B. Appellant Waived his Claim that he was Subject to Pretrial Punishment.

### 1. *Standard of Review and the Law*

Whether a pretrial prisoner is being unlawfully punished is of both constitutional and statutory concern.[60] Article 13, UCMJ, prohibits two things: illegal pretrial punishment and illegal pretrial confinement.[61] It presents a "mixed question of law and fact" qualifying for independent review.[62] Pretrial punishment includes public denunciation and degradation.[63] A military judge has broad authority to order administrative credit against adjudged confinement as a remedy for Article 13 violations.[64]

Punitive intent is one significant factor when determining whether an Article 13 violation has occurred. If an accused or appellant can demonstrate a violation of Article 13, then he or she is entitled to sentence relief. In *United States v. Palmiter* our superior court set out the process for evaluating alleged Article 13, UCMJ, violations:

> [T]he question of whether particular conditions amount to punishment before trial is a matter of intent, which is determined by examining the purposes served by the restriction or condition, and whether such purposes are "reasonably related to a legitimate governmental objective."
>
> [I]n the absence of a showing of intent to punish, a court must look to see if a particular restriction or condition, which may on its face

---

[60] *United States v. McCarthy*, 47 M.J. 162, 164 (1997) (citations omitted).

[61] Article 30, UCMJ.

[62] *McCarthy*, 47 M.J. at 165 (quoting *Thompson v. Keohane,* 516 U.S. 99, 113 (1995)).

[63] *United States v. Cruz*, 25 M.J. 326, 330 (C.M.A. 1987) (citations omitted).

[64] *United States v. Suzuki*, 14 M.J. 491, 493 (C.M.A. 1983).

appear to be punishment, is instead but an incident of a legitimate nonpunitive governmental objective.[65]

Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." "Conversely, if a restriction or condition is not reasonably related to a legitimate goal--if it is arbitrary or purposeless--a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees."[66]

### 2. Analysis

The Supreme Court has established that waiver is the "intentional relinquishment or abandonment of a known right."[67] Whether an issue is waived is a question of law we review de novo.[68] Waiver is different from forfeiture. Forfeiture is the failure to make the timely assertion of a right; waiver is the intentional relinquishment or abandonment of a known right.[69] Courts and practitioners must recognize that the distinction between these terms is important. If an appellant has forfeited a right by failing to raise it at trial, we review for plain error.[70] On the other hand, when an appellant intentionally waives a known right at trial, it is extinguished and may not be raised on appeal.[71]

During his plea colloquy Appellant was specifically asked:

MJ: Defense, has the accused been punished in any way that would constitute illegal pretrial punishment?

---

[65] 20 M.J. 90 (C.M.A. 1985) (citations omitted).

[66] *Bell v. Wolfish*, 441 U.S. 520, 538 (1979).

[67] *Olano*, 507 U.S. at 733 (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)) (citations omitted).

[68] *United States v. Haynes*, 79 M.J. 17, 19 (C.A.A.F. 2019). We further note, even if there was no waiver of this issue, that failure at trial to seek credit for illegal pretrial punishment will constitute forfeiture, rendering the issue ineligible for appellate relief in the absence of plain error. Based on our de novo review, we conclude that Appellant cannot meet his burden of establishing plain error.

[69] *United States v. Olano*, 507 U.S. at 733 (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)) (citations omitted).

[70] *Harcrow*, 66 M.J. 154, 156 (C.A.A.F. 2008) (citing *Olano*, 507 U.S. at 733-34).

[71] *Id.* (citing *Olano*, 507 U.S. at 733-34).

DC: No, Your Honor.

MJ: Would you agree with that Corporal Suarez?

ACC: Yes, Your Honor.

This constitutes waiver of the issue of pretrial punishment credit at trial. Such waiver "leaves no error for us to correct on appeal."[72] We therefore reject this AOE.

a. Assuming Arguendo Appellant's Article 13 claim was not waived, Appellant cannot show he was entitled to relief.

As previously stated, the quantum of credit awarded for a violation of Article 13 is within the broad discretion of the military judge. There is no formulaic application that mandates how much credit an appellant is due when the Government runs afoul of the rule. The plethora of considerations include the nature, duration, degree and impact of the Government's foul, but in considering such, military judges must also consider any remedial actions taken, the nature of the case and the case posture. Even where an Article 13 violation has been found to have occurred, in the absence of substantial prejudice, no credit is warranted.[73] Here, the conduct Appellant alleges to be an Article 13 violation was his public apprehension by NCIS agents and derogatory public labelling by battalion leadership. The violation, primarily in the form of public degradation, was of limited duration, and the CG took rapid and effective steps to remediate the problem. Further, Appellant freely entered into a plea agreement with the Government, agreeing to plead guilty to various charges in exchange for a cap on confinement and withdrawal of other charges. Giving full consideration to the facts of the case, nature of the Article 13 violation and steps taken by the Government, it is not difficult to find, therefore, that an Article 13 motion, if raised, would have resulted in no actual benefit to Appellant. In the absence of probable benefit at trial we decline to award credit now.

---

[72] *See Campos*, 67 M.J. at 332 (internal quotation marks omitted) (citation omitted); *Haynes*, 79 M.J. at 19 (internal quotation marks omitted) (citation omitted).

[73] See *United States v. Farrell*, No. 201700011, 2018 CCA LEXIS 293 (N-M. Ct. Crim. App. June 14, 2018); *United States v. Villamil-Perez*, 32 M.J. 341 (C.A.A.F. 1991).

### C. Trial Defense Counsel were not Ineffective.

#### 1. Standard of Review and the Law.

We review claims of ineffective assistance of counsel de novo.[74] The Sixth Amendment entitles criminal defendants to representation that does not fall "below an objective standard of reasonableness" in light of "prevailing professional norms."[75] In order to prevail on a claim of ineffective assistance of counsel, an appellant must demonstrate both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice.[76] With respect to the first prong, counsel are presumed to be competent and our inquiry into an attorney's representation is "highly deferential" to that attorney.[77] We employ "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[78] An appellant has the heavy burden of establishing a factual foundation for a claim of ineffective representation.[79] We will not second-guess strategic or tactical decisions made by the trial defense counsel unless the appellant can show specific defects in counsel's performance that were unreasonable under prevailing professional norms.[80]

In order to show prejudice under the second prong, an appellant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."[81] That requires a substantial, not just conceivable, likelihood of a different result.[82] "Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been

---

[74] *United States v. Harpole*, 77 M.J. 231, 236 (C.A.A.F. 2018) (citing *United States v. Captain,* 75 M.J. 99, 102 (C.A.A.F. 2016)).

[75] *Strickland v. Washington*, 466 U.S. 668 (1984).

[76] *Strickland*, 466 U.S. at 678, 682-685.

[77] *Id.* at 689.

[78] *Id.*

[79] *United States v. Grigoruk*, 52 M.J. 312, 315 (C.A.A.F. 2000).

[80] *United States v. Mazza*, 67 M.J. 470, 475 (C.A.A.F. 2009).

[81] *Strickland*, 466 U.S. at 694.

[82] *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (internal quotation marks omitted) (citation omitted).

affected by errors than one with overwhelming record support."[83] In the context of a guilty plea, the analysis of an ineffective assistance of counsel claim focuses on whether the alleged ineffective performance affected the outcome of the plea process. "To satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."[84] When there is an allegation that counsel was ineffective in the sentencing phase of the court-martial, this Court must consider "whether there is a reasonable probability that, but for counsel's error, there would have been a different result."[85]

### 2. Analysis

There is nothing in the record to indicate that, but for his counsels' alleged error, Appellant would not have pleaded guilty and would have insisted on going to trial.

Appellant's ineffective assistance of counsel claim is directed at three separate aspects of their representation. We address each separately:

### (a) Failure to seek Article 13 credit

As discussed above, the duration of the claimed Article 13, UCMJ violation was limited. While the impact of the conduct arguably covered a greater duration, that is a matter for consideration under the UCI analysis, not Article 13. Other factors for consideration included the Government's remedial actions, and the procedural posture of the case. In order to prevail on this matter Appellant must prove both that not filing a motion for Article 13 credit in these circumstances was unreasonable and that such a motion would have resulted in sentence credit.

Appellant can show neither. The CAAF has held "[a]n attorney's decision to forgo taking actions that likely would be futile is not deficient."[86] Here, given the broad discretion of the military judge to determine an appropriate remedy and the totality of the circumstances discussed above, it is not difficult to imagine, even with an Article 13 violation, no credit being awarded rendering the motion futile. Appellant

---

[83] *Strickland,* 466 U.S. at 696.

[84] *Bradley*, 71 M.J. 13, 16 (C.A.A.F. 2012) (citing *Hill v. Lockhart*, 474 U.S. 52, 56-58 (1985)).

[85] *United States v. Captain*, 75 M.J. 99, 103 (C.A.A.F. 2016) (quoting *United States v. Quick*, 59 M.J. 383, 386-87 (C.A.A.F. 2004)).

[86] *United States v. Cueto,* 82 M.J. 323, 329 (C.A.A.F. 2022) (citing *Vieux v. Pepe*, 184 F.3d 59, 64 (1st Cir. 1999)) (citation omitted).

requests we award "three-for-one credit for the entirety of his time in pretrial confinement,"[87] but fails to either cite authority for such a calculation, or explain how this would not be the definition of a windfall. Appellant's argument highlights the broad discretion issue where in the military judge could just have easily determined this was a *de minimis* violation. *De minimis* violations do not require administrative credit.[88] Thus Appellant can neither show the unreasonableness requirement of prong 1, nor the prejudice requirement of prong 2. Thus, Appellant has failed to demonstrate a substantial likelihood of relief from an Article 13 motion, or that but for his counsel's failure to seek such relief, he would not have pleaded guilty. Appellant simply has not met his burden here. We therefore find trial defense counsel was not ineffective in not filing a motion for Article 13 credit.

**(b) Negotiating a plea agreement to avoid sex offender registration where no such registration was required**

To prevail on this claim Appellant must show that trial defense counsel's negotiation to avoid sex offender registration stemming from the original attempted prostitution charge was both unreasonable and prejudicial.[89]

In response to our order to produce declarations defense counsel stated in part:

 I advised the Appellant of the potential for sex offender registration due to the allegation of attempted prostitution. I informed him that with a lot of collateral consequences, it is difficult to determine what the laws would be for each state he could live in. I advised him that prostitution and an [sic] any attempt was included on Table 6 in [Department of Defense Instruction] 1325.07…[90]

---

[87] Appellant's Brief at 37.

[88] *United States v. Corteguera*, 56 M.J. 330, 333 (C.A.A.F. 2002) (where the pretrial confinee was made to sing "I Believe I Can Fly" and to run from window to window in the jail yelling, "I'm an inmate and I'm here because I can't get it right" constituted "'de minimis' impositions…for which administrative credit was not required.").

[89] Article 80, UCMJ: Specification (Attempt of prostitution): In that Corporal Joseph D. Suarez, U.S. Marine Corps, while on active duty, did on the island of Oahu, Hawaii, on or about 6 January 2022, attempt to wrongfully engage in prostitution.

[90] Department of Defense Instruction (DODI) Number 1325.07 Incorporating Change 4, August 19, 2020.

While we agree collateral consequences across the states are difficult to determine, we find any reliance on Table 6 of DODI 1325.07 to suggest sex offender registration in this circumstance to be unreasonable. The DODI specifically states:

Notwithstanding the offenses listed in Table 4,[91] offenses under Articles 120 or 134 of the UCMJ that constitute only public sex acts between consenting adults do not require sex offender registration. "*An offense involving consensual sexual conduct between adults is not a reportable offense….*"[92]

As such we agree in part with Appellant's claim of ineffective assistance of counsel. It is not reasonable to suggest that DODI 1325.07 is a source of authority for sex offender registration for attempted prostitution under these circumstances. And while trial defense counsel may have wanted to "shield the client from any other interpretation,"[93] without specific legal analysis, state-specific research and detailed explanation to the client, the DODI should not have formed the basis of plea negotiations to avoid sex offender registration in this case.

However, in order to meet the requirements of *Strickland*, as the Supreme Court recently reiterated, an accused must show that counsel provided a "deficient" performance that "prejudiced" him.[94] To show prejudice, Appellant must show the plea agreement reached would have been more beneficial (e.g. less confinement time or some other bargained for benefit) without the negotiation related to the attempted prostitution charge. He cannot do so.

The declaration from trial defense counsel makes it clear that trial counsel was willing to support a 48-month deal in exchange for Appellant's cooperation and testimony against others, but Appellant did not "desire… to engage in that assistance…"[95] We note first that, under the law governing this case, the convening authority must decide what deal the Government would make rather than trial counsel and nowhere in the record or additional documents under consideration is there any indication the convening authority would have accepted less than 60 months regardless of trial counsel's advice or negotiation. Second, it was, according to trial

---

[91] The DODI provides no analysis of Table 6 (or Table 5), however these tables list offenses from different periods following on from Table 4. In so much as Table 6 is incorporated by inclusion then the limitations on its use must also be included.

[92] DODI 1325.07 (emphasis added).

[93] Trial defense counsel's Declaration.

[94] *Thornell v. Jones*, 144 S. Ct. 1302, 1310 (2024).

[95] Trial defense counsel's Declaration.

defense counsel's declaration, Appellant's desire with regard to cooperation, which moved the needle up from 48 months. It is difficult to fathom how Appellant would have fared better at sentencing with an additional charge for attempted prostitution under consideration. Finally, the maximum punishment for the offenses to which the Appellant pleaded guilty was 80 years;[96] the withdrawn attempted prostitution charge has a maximum confinement of 1 year. We are skeptical that considerations of additional confinement in exchange for this withdrawn charge was a driving factor. Appellant urges us to equate withdrawal of the attempted prostitution charge with a wider sentencing range that is neither clear from the record nor self-evident. It is just as likely that the withdrawal of the attempted prostitution charge was a benefit to Appellant in so far as the number and scope of the charges he faced and the 60-month cap on confinement was as low as the convening authority was willing to go. Therefore, Appellant cannot show prejudice based on the negotiations. The record simply shows one less charge he was required to plead guilty to in exchange for a confinement cap 75 years below the maximum authorized.

While Appellant can satisfy the first prong of *Strickland*, he cannot satisfy the second and consequently cannot show ineffective assistance of counsel on this issue.

**(c) Advising Appellant to agree to "waive all waivable motions" including the UCI**

Having raised, argued and been denied the requested relief at trial for UCI, Appellant entered into a plea agreement that included a "waive all waivable motions" provision. Such provisions are accepted terms within the military justice arena.[97] Such plea agreement terms are beneficial to the convening authority by bringing greater certainty to the conviction[98] and the accused the opportunity to negotiate for reduced charges, a reduced sentence, or both by pleading guilty and giving up some of his constitutional and statutory rights.[99] These provisions remain subject to appellate review under Article 66(d), UCMJ. In this case however, Appellant challenges the legal advice to enter into such an agreement rather than the provision itself. We therefore must conduct the same *Strickland* analysis as above.

---

[96] R. at 394.

[97] *See, e.g., United States v. Gladue*, 67 M.J. 311 (C.A.A.F. 2009).

[98] *United States v. Chin*, 75 M.J. 220, 223 (C.A.A.F. 2016).

[99] *Chin,* 75 M.J. 226.

Appellant argues waiver of the UCI issue de facto was ineffective assistance of counsel and we should therefore set aside the findings and sentence and dismiss the charges with prejudice.[100] We decline to do so for several reasons.

First, despite Appellant's claim on appeal that he was confused, the military judge specifically discussed the impact of the "waive all waivable motions" provision on the previously raised UCI motion and Appellant agreed that he was waiving his right to appellate review of that issue. And, despite defense counsel's assertion to this court that the "waive all waivable motions" discussion was concerned the unreasonable multiplication of charges, the record is clear that was not the case.[101]

Second, our review of this issue above is dispositive. While we find the issue was waived, out of an abundance of caution and to further guarantee trustworthiness in the military justice process we have completed a de novo review of the UCI issue. Based on that review, we conclude the "waive all waivable motions" provision in this case did not adversely impact Appellant. We, like the trial judge, find that while some evidence of UCI existed, the Government proved beyond a reasonable doubt that the UCI did not affect the proceedings. Therefore, under the *Strickland* analysis, while trial defense counsel's understanding and explanation of the scope of what the "waive all waivable motions" provision covered was below the standard expected and was deficient, there is no prejudice to Appellant.

## III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[102] The findings and sentence are **AFFIRMED**.



FOR THE COURT:

MARK. K JAMISON
Clerk of Court

---

[100] Appellant's Brief at 40.

[101] R. at 402.

[102] Articles 59 & 66, UCMJ.